IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HSGCHG Investments, LLC, | ) | Civil Action No.: 4:15-CV-04401-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Time Warner Cable Enterprises LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently pending before the Court is Defendant's motion to dismiss and compel arbitration [ECF #4] and Defendant's motion to dismiss and compel arbitration of second amended complaint [ECF #10]. Both parties have had the opportunity to extensively brief the issues raised in the motions to dismiss, and this Court has thoroughly considered all pleadings filed in this case.[1]

**Factual Background and Procedural History**

Plaintiff HSGCHG Investments, LLC ("HSGCHG") is a limited liability company organized under the laws of Delaware and doing business in Marion County, South Carolina. [ECF #6, p. 1]. According to Mr. Teja Shariff, Plaintiff's Chief Financial Officer, HSGCHG holds title to a certain piece of property where the Swamp Fox Entertainment Complex (the "Complex") is located. [ECF #14-2, p. 1]. The Complex is a venue for staging and producing live entertainment events. [ECF #14-2, p. 1]. Defendant Time Warner Cable Enterprises, LLC ("Time Warner") is a corporate entity organized under the laws of the state of Delaware and doing business in Marion

---

[1] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

County, South Carolina. [ECF #6, p. 1].

The facts, as alleged in Plaintiff's second amended complaint, are as follows: on January 9, 2015, Plaintiff and Defendant entered into a contract, known as the Business Class Phone and Business Class Trunk Service Agreement (the "Agreement") wherein Plaintiff agreed to utilize the services provided by Defendant, including internet access, voice and data services, and fiber optic cable service as part of an event, the Swamp Fox Biker Bash, to be held at the Complex. [ECF #6, pp. 1-2]. The Agreement incorporates by reference Time Warner's Terms and Conditions ("Terms and Conditions"), which include, among other provisions, an arbitration provision in Section 21.0. [ECF #6, p.3, ¶ 12).

Plaintiff alleges that Defendant defaulted on the Agreement by failing to install fiber optic cable in accordance with the agreed-upon schedule. [ECF #6, p. 2]. As a result, Plaintiff was forced to cancel the Swamp Fox Biker Bash, thereby causing Plaintiff damage and injury, including significant lost profits. [ECF #6, p. 2]. Thereafter, Plaintiff filed suit seeking a declaratory judgment regarding the rights and responsibilities of the parties under S.C. Code Ann. § 15-53-10 *et seq*. [ECF #6, p. 2]. Specifically, Plaintiff seeks a declaratory judgment rendering unenforceable Section 22.0 of the Terms & Conditions concerning venue and Section 14.0 limiting Defendant's liability. [ECF #6, p. 4]. Plaintiff acknowledges that the Terms and Conditions contains an arbitration provision in Section 21.0, and accordingly, also demand arbitration of its dispute with Defendant. [ECF #6, p. 3, ¶ 13]. Plaintiff does not otherwise dispute the validity of the arbitration agreement.

On or about October 29, 2015, Time Warner removed this lawsuit to this Court from the

2

Marion County Court of Common Pleas pursuant to 28 U.S.C. § 1332(a). [ECF #1].    On November 5, 2015, Defendant filed a motion to dismiss Plaintiff's complaint and compel arbitration. [ECF #4].    Thereafter, Plaintiff twice amended its complaint. [ECF #5; ECF #6]. Defendant then filed a subsequent motion to dismiss the second amended complaint and compel arbitration. [ECF #10], which is nearly identical to the original motion to dismiss.    Plaintiff does not dispute that this lawsuit is subject to arbitration. [ECF #6, p. 3, ¶ 13].    Instead, the parties disagree on the arbitrability of two specific provisions within the Terms and Conditions.

## Standard of Review

Defendant files its motion pursuant to 9 U.S.C. § 4, of the Federal Arbitration Act. The parties are in agreement that the currently-pending claim is subject to arbitration. Whether the parties have agreed to arbitrate their disputes is a jurisdictional question. *See Bhd of Ry. & S.S. Clerks v. Norfolk S. Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944).    Here, the issue before this Court is whether certain specific provisions found in the Terms and Conditions, a document incorporated into the Agreement, are enforceable.    Defendant argues that pursuant to the Agreement, the arbitrability of these provisions are questions for the arbitrator to determine based upon the plain language of the Agreement. [ECF #10, p. 2].    Plaintiff argues that this Court must determine whether these provisions are unconscionable, and therefore, enforceable, prior to subjecting the substantive claims to arbitration. [ECF #14, p. 2].    Because the issue before the Court is the jurisdictional question of arbitrability, the Court ordinarily considers the motion under a Rule 12 standard. *Joyner v. GE Healthcare*, No. 08-2563, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009).    For the purposes of deciding a motion to compel arbitration, the court may

3

properly consider documents outside the pleadings. *Joyner v. GE Healthcare*, No. 08-2563, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009).

## Discussion

### A. Delegation of Arbitrability to Arbitrator

Plaintiff and Defendant agree that the Agreement governing their dispute incorporated another document entitled Terms and Conditions, which provides for arbitration of this dispute. [ECF #6, p. 3; ECF #10, pp. 1-2]. In fact, Plaintiff makes a demand for arbitration in its second amended complaint pursuant to Section 21.0 of the Terms and Conditions. [ECF #6, p. 3]. However, Plaintiff seeks a judicial determination that certain specific provisions within the Terms and Conditions, notably the forum selection clause contained within Section 21.0, Section 22.0 covering venue of the arbitration, and Section 14.0 limiting Defendant's liability, are unenforceable prior to submitting the actual dispute to arbitration. [ECF #6, p. 3]. In so arguing, Plaintiff argues that these provisions are unconscionable as a matter of state law. [ECF #6, p. 3]. Interestingly, Plaintiff relies on New York state law because the Terms and Conditions provide for New York law to govern all legal actions brought "under or in connection with the subject matter of the Master Agreement," and therefore cite to New York state law in analyzing its unconscionability claim. [ECF #14, p. 3].[2]

The Terms and Conditions contains the following arbitration provision:

---

[2] The "Master Agreement" is defined in the Terms and Conditions as the Terms and Conditions, and any Time Warner Cable Business Class Service Orders, which are incorporated into the Time Warner Cable Business Class National Service Agreement or the Time Warner Cable Business Class Service Agreement.

21.0 ARBITRATION

      EXCEPT FOR CLAIMS FOR INJUNCTIVE RELIEF, AS DESCRIBED BELOW, ANY PAST, PRESENT, OR FUTURE CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THE MASTER AGREEMENT SHALL BE BROUGHT IN THE BOROUGH OF MANHATTAN, CITY OF NEW YORK AND SHALL BE RESOLVED BY BINDING ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS COMMERCIAL ARBITRATION RULES, INCLUDING, IF APPLICABLE, THE SUPPLEMENTARY PROCEDURES FOR THE RESOLUTION OF CONSUMER RELATED DISPUTES. CONSOLIDATED OR CLASS ACTION ARBITRATIONS SHALL NOT BE PERMITTED. THE ARBITRATOR OF ANY DISPUTE OR CLAIM BROUGHT UNDER OR IN CONNECTION WITH THE MASTER AGREEMENT SHALL NOT HAVE THE POWER TO AWARD INJUNCTIVE RELIEF; INJUNCTIVE RELIEF MAY BE SOUGHT SOLELY IN AN APPROPRIATE COURT OF LAW. NO CLAIM SUBJECT TO ARBITRATION UNDER THE  MASTER AGREEMENT MAY BE COMBINED WITH A CLAIM SUBJECT TO RESOLUTION BEFORE A COURT OF LAW.  THE ARBITRABILITY OF DISPUTES SHALL BE DETERMINED BY THE ARBITRATOR. JUDGMENT UPON AN AWARD MAY BE ENTERED IN ANY COURT HAVING COMPETENT JURISDICTION.  IF ANY PORTION OF THIS SECTION IS HELD TO BE UNENFORCEABLE, THE REMAINDER SHALL CONTINUE TO BE ENFORCEABLE.

[ECF #10-2, pp. 10-11].   Defendant argues that the language in the above-stated arbitration provision "clearly and unmistakably" evidences an intent by the parties to submit the question of arbitrability to an arbitrator. *See Peabody Holding Co., LLC v. United Mine Works of America, Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012). This provision also includes a forum selection clause providing for arbitration to be brought in Manhattan, New York.

In Section 22.0, the Terms and Conditions provide that, "[a]ny legal action brought under or in connection with the subject matter of the Master Agreement shall be brought only in the United States District Court for the Southern District of New York, or if such court would not have jurisdiction over the matter, then only in a New York State Court sitting in the Borough of Manhattan, City of New York." [ECF #10-2].  Section 22.0 further provides that the parties waive

any objection to the laying of the venue of any legal action. [ECF #10-2].  Finally, Section 14.0

contains a limitation of liability provision limiting Defendant's damages for any incidental, indirect,

consequential, special or punitive damages and limiting the aggregate liability for any claims to

the fees paid or owed by the customer under the service order in the six (6) months preceding the

date of the claim. [ECF #10-2].  At issue is whether this Court or an arbitrator determines the

enforceability of these provisions.

Disputes concerning arbitrability often necessitate a two-step inquiry. *See, e.g., Peabody*

*Holding Co., LLC v. United Mine Workers of America, Int'l Union*, 665 F.3d 96, 101 (4th Cir.

2012) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)).  First, the

court determines who decides whether a dispute is arbitrable. *Id.* If the court concludes that the

court is the proper form to adjudicate this question, then the courts decide whether the dispute is

arbitrable. *Id.*   As with any contractual claim, the intent of the contracting parties guides the

court's analysis of whether the parties intended to arbitrate the issue of arbitrability. *Id.* at 102.

In order for this Court to find that the parties agreed to arbitrate arbitrability, the agreement must

"clearly and unmistakably" provide that the arbitrator shall determine what disputes the parties

agreed to arbitrate. *Id.*

Those parties who wish to let an arbitrator decide which issues or disputes are arbitrable

must state that "'all disputes concerning the arbitrability of particular disputes under this contract

are hereby committed to arbitration.' or words to that clear effect." *Carson v. Giant Food, Inc.*,

175 F.3d 325, 330-31 (4th Cir. 1999).  Turning to the plain language of the arbitration provision

in the Terms and Conditions, it appears that the parties clearly and unmistakably chose for the

6

arbitrator to resolve the issue of arbitrability of disputes because the provision states, "the arbitrability of disputes shall be determined by the arbitrator." Furthermore, Plaintiff expressly acknowledges a willing intention to be bound by at least Section 21.0 governing arbitration by demanding arbitration in the facts alleged within its own complaint. [ECF #6, p. 3].   Therefore, this Court finds Plaintiff clearly agreed to submit all claims to arbitration, including the arbitrability of related issues, except for any grounds that exist in the law that provide otherwise.

### B. Venue and Forum Selection Clause Provisions

Without directly addressing the issue of whether it agreed to the arbitrability of the disputed provisions, Plaintiff argues that the alleged unconscionability of the limitation of liability, forum selection clause and venue provisions are not related to arbitration procedure. [ECF #14, pp. 3-6]. Rather, Plaintiff argues that the portions of the Terms and Conditions it wishes to invalidate are substantively and procedurally unconscionable under state law, and argues this Court must first determine the issue of unconscionability prior to sending this dispute to arbitration. [ECF #14, p. 7].   Specifically, Plaintiff argues that because Time Warner has a monopoly in the area Plaintiff needed service, Time Warner had unfair advantage and control over the terms of the contract. [ECF #14, p. 5].   Plaintiff's CFO, Mr. Shariff, also alleges within his affidavit that Plaintiff was not given the opportunity to negotiate the Terms and Conditions or was aware of these provisions at the time of signing the Agreement. [ECF #14-2].   Still, Plaintiff does not dispute the validity of the arbitration provision, and in fact relies upon the Terms & Conditions to not only demand arbitration but argue that the applicable New York state law set forth in the Terms and Conditions and included within a provision Plaintiff seeks to eliminate, supports its unconscionability claim.

7

[ECF #14, p. 3].

Defendant does not respond with any substantive arguments regarding the alleged unconscionability of certain provisions. Instead, Defendant argues that by expressly agreeing to the arbitrability of disputes, the parties have not only agreed to allow an arbitrator to arbitrate the substantive claims, but also to determine whether these specific provisions are enforceable. [ECF #10, p. 5,7; ECF #15, p. 3]. Therefore, Defendant argues that whether certain provisions within the Terms and Conditions are unconscionable is an issue that should be decided by the arbitrator in the first instance.

Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts look to ordinary state law principles governing the formation of contracts in deciding whether a contract is enforceable. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). Additionally, the federal substantive law of arbitrability, governing all arbitration agreements encompassed by the FAA also applies. *Id.* Indeed, whether venue and forum selection provisions are arbitrable has previously been considered by this circuit.

The Fourth Circuit has previously considered the scope of arbitrable issues regarding the proper location (forum selection clause) of an arbitration panel in *Central West Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267 (4th Cir. 2011). The Fourth Circuit relied upon *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), a case that clarified an exception to the question of arbitrability. In *Howsam*, the Supreme Court reiterated the rule that the question of whether parties have submitted a particular dispute to arbitration is normally an issue for

8

judicial determination, unless the parties clearly and unmistakably provide otherwise. *Howsam*, 537 U.S. at 83. *Howsam* also made clear that not every "potentially dispositive gateway question" is one of arbitrability. *Id.* Instead, "procedural" questions growing out of the dispute and bearing upon its final disposition are for an arbitrator to decide. *Id.* at 84. Applying this logic, the *Howsam* Court concluded that the question of whether a dispute that was more than six years old was procedural in nature, and therefore appropriate to submit to an arbitrator. *Id.* at 85. Similarly, in *Dockser v. Schwartzberg*, the Fourth Circuit concluded that whether one or three arbitrators would preside over the issues in a case was a question of arbitration procedure, and the parties' agreement did not otherwise provide for judicial resolution of that question. 433 F.3d 421, 425 (4th Cir. 2006).

The *Bayer Cropscience LP* Court relied upon the reasoning in these cases to determine that a dispute implicating overlapping jursidiction of two arbitration panels was not a matter or arbitrability necessitating resolution by the courts. *Bayer Cropscience LP*, 645 F.3d at 273-274. The *Bayer Cropscience LP* Court found that the parties agreed to have the entire dispute heard by arbitrators; thus, the issue of which arbitration panel sitting in which jurisdiction would preside was not a question of whether to proceed by arbitration, but instead a question of which panel should decide the issues involved in the case (i.e. "procedural in nature"). *Id.* at 274. The *Bayer Cropscience LP* Court concluded the contention was akin to a venue dispute, rather than a question of arbitrability, and as such, was subject to arbitral resolution. *Id.*

Relying upon *Bayer Cropscience LP*, another court within this district has previously determined that the issue of venue is appropriate for arbitral resolution. *Kidston v. Resources*

9

*Planning Corp.*, 2012 WL 2512933, at *4 (D.S.C. June 29, 2012). Consistent with *Bayer Cropscience LP* and *Kidston*, this Court finds that given the fact that the parties have included contractual language regarding the issue of arbitrability of disputes, the issue of appropriate forum selection and venue are for an arbitrator to decide. Here, not only is venue more akin to a "procedural" issue of how to proceed, but the parties have unmistakably agreed to the "arbitrability of disputes" being "determined by the arbitrator." [ECF #10-2].

### C. Unconscionability of Limitation of Liability Provision

Finally, Plaintiff argues that prior to this case proceeding to arbitration, this Court must decide whether the limitation of damages provision is unconscionable, and accordingly, unenforceable. South Carolina law provides that a contract is unconscionable if characterized by the "absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Carolina Care Plan, Inc. v. United Healthcare Servs., Inc.,* 361 S.C. 544, 554 (2004) (explaining the standard for finding an arbitration agreement unconscionable at the motion to dismiss stage (citing *Fanning v. Fritz's Pontiac-Cadillac-Buick Inc.*, 322 S.C. 399 (1996))). Plaintiff argues that New York law has a similar standard, and that Time Warner's claimed monopoly over the fiber optic cable business created an environment where Plaintiff lacked meaningful choice in entering the Agreement. [ECF #14, p. 5]. This fact is plainly disputed by Defendant. [ECF #15, p. 5].[3] Plaintiff also argues that the incorporation of the Terms and Conditions into its Service Agreement was vastly one-sided. [ECF #14, p. 5].

---

[3] Defendant also points out that this is a substantive argument to be argued to the arbitrator.

10

The Supreme Court divides validity challenges to an agreement under § 2 of the FAA into two types: the first type challenges the validity of the specific agreement to arbitrate, while the other challenges the contract as a whole, either on a ground directly affecting the entire agreement or on the ground that illegality of one provision renders the whole contract invalid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citing *Southland Corp v. Keating*, 465 U.S. 1 (1984)). In *Buckeye*, the challenge was that the contract as a whole (including the arbitration provision) was invalid because of a usurious finance charge. *Id.* *Buckeye* held that because the challenge was to the contract, but not specifically the provision providing for arbitration, the challenge should be considered by the arbitrator, and not the court. *Id.* at 446. The *Buckeye* Court relied upon *Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) to reach this conclusion. *Prima Paint* considered whether a federal court or an abitrator would consider a claim of fraud in the inducement of an entire contract. *Id.* at 402. The *Prima Paint* Court concluded that if the fraud claim is directed toward the arbitration clause itself, and thus, would bear upon the making of the agreement to arbitrate, a federal court would properly adjudicate the matter. However, this same result would not be reached if the party was alleging fraud as to the entire contract. *Id.* at 403-404.

A few years after the Supreme Court decided *Buckeye,* the Supreme Court decided *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), which addressed whether under the FAA, a district court can decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns this delegation of authority to an arbitrator.  In *Jackson*, the plaintiff filed an employment discrimination suit in federal court, and the defendant filed a motion to

11

dismiss or stay the proceedings. *Id.* at 65.   The agreement provided for the arbitrator to have

"exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability

or formation of this Agreement including, but not limited to any claim that all or any part of this

Agreement is void or voidable." *Id.* at 66.   The plaintiff opposed the motion on the ground that

the arbitration agreement was clearly unenforceable in that it was unconscionable under state law.

*Id.* The defendant responded generally to the unconscionability claims but also argued that the

arbitrator has exclusive authority to resolve the issue of enforceability of the agreement. *Id.* In

*Jackson*, the Court first acknowledged that it had previously recognized the fact that parties can

agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed

to arbitrate or whether their agreement covers a particular controversy. *Id.* at 69.   *Jackson* then

relied upon *Prima Paint* and *Buckeye* in determining that a federal court may hear a challenge to

the validity of the precise agreement to arbitrate under § 2 of the FAA. *Id.* at 71.   However, in

*Jackson*, the dispute was over whether to enforce the delegation provision giving the arbitrator

exclusive authority to resolve *any* dispute related to the enforcement of the agreement. The

*Jackson* Court held that whether the underlying contract itself was an arbitration agreement made

no difference.   Unless the challenge was specifically to the delegation of power to the arbitrator,

the challenge to the validity of the agreement as a whole should be decided by an arbitrator. *Id.*

at 72. Thus, whether the contract as a whole is unconscionable was a question for the arbitrator,

and not the court.

    Here, the Agreement is similar to the agreement found in *Jackson* in that it contains similar

language within the arbitration provision delegating the issue of arbitrability to an arbitrator.

Plaintiff fails to rebut or otherwise challenge the validity of the delegation provision found in the Terms and Conditions. Further, Plaintiff does not argue that the agreement to arbitrate is somehow unenforceable or unconscionable. To the contrary, Plaintiff relies upon the arbitration provision to demand arbitration within its amended complaint. Therefore, this Court is tasked with determining whether questions of alleged unconscionability of other, separate provisions of the contract, and not the agreement to arbitrate, must be resolved in the first instance by this Court, prior to sending this lawsuit to arbitration.

Plaintiff cites to a Second Circuit case to support its argument that the law requires questions of unconscionability to be decided prior to arbitration. However, that case, *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 121 (2d Cir. 2010), simply reiterates the rule, found in the previously-cited Supreme Court cases, that recognizes that if the allegation is that the arbitration agreement itself is unconscionable, then the federal court would consider that issue prior to submitting the case to arbitration. Plaintiff does not argue the unconscionability of the arbitration agreement. Instead Plaintiff argues that it is proper for this Court to determine whether specific provisions (i.e., the forum selection clause, venue, and limitation of liability provisions) are unconscionable, and thus unenforceable. [ECF #14, p. 2].

Relying on *Jackson* and *Buckeye*, this Court finds that because Plaintiff does not question Section 21 and the validity or unconscionability of the specific agreement to arbitrate, does not dispute the delegation of arbitrability to the arbitrator, and indeed references the arbitration agreement in order to demand arbitration, this Court may not properly consider Plaintiff's claim that other sections within the contract are unconscionable. Accordingly, Plaintiff's argument as

13

to the unconscionability of the remainder of the contract as a part or in whole, must be decided by the arbitrator. *See Buckeye*, 546 U.S. at 449; *Jackson*, 561 U.S. at 72.

Finally, in response to Plaintiff's arguments, Defendant points out that the arbitration provision incorporates the Commercial Arbitration Rules of the American Arbitration Association. These rules provide that the arbitrator rules on his or her own jurisdiction, including any dispute as to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim. AAA Rule-7(a). As previously pointed out, Plaintiff does not dispute that the arbitration provision applies, and in fact demands arbitration. Accordingly, this Court notes that the inclusion of these Rules provides additional support for the finding that based on the clear terms of the Agreement and applicable law, these parties intended to submit resolution of the disputed issues to an arbitrator.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's motion to dismiss, Plaintiff's response to the motion, Defendant's reply, and the applicable law. For the reasons stated above, Defendant's motion to dismiss plaintiff's amended complaint and to compel arbitration [ECF #10] is **GRANTED.**  The earlier-filed motion to dismiss [ECF #4] is **DENIED** as moot. Plaintiff's second amended complaint [ECF #6] is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

Florence, South Carolina                                 s/ R. Bryan Harwell
July 5, 2016                                             R. Bryan Harwell
                                                        United States District Judge

14